# <u>EXHIBIT B</u>

# In The Matter Of:

*Constellation Enterprises, LLC.*

---

*Bankruptcy Recording*
*September 27, 2017*

---

*Wilcox & Fetzer, Ltd.*
*1330 King Street*
*Wilmington, DE   19801*
*email: depos@wilfet.com, web: www.wilfet.com*
*phone:  302-655-0477, fax:  302-655-0497*



Original File Constellation 9-27-17 Bankruptcy Recording.txt
**Min-U-Script® with Word Index**

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

In re:                          ) Chapter 11
                                )
Constellation Enterprises       ) Case No.
LLC, et al.,                    ) 16-11213 (CSS)
                                )
          Debtors.             )
----------------------------)
Trevor Miller, on behalf of)
himself and all others      )
similarly situated,         )Adversary Case
                            )No. 16-50997 (CSS)
          Plaintiffs,      )
                            )
v.                          )
                            )
Columbus Steel Castings     )
Company, Columbus Holdings,)
Inc., and Constellation     )
Enterprises, LLC,           )
                            )
          Defendants.      )

Wilmington, Delaware
September 27, 2017
10:07 a.m.

TRANSCRIPT OF AN ELECTRONIC RECORDING
BEFORE THE HONORABLE CHRISTOPHER S. SONTCHI
UNITED STATES BANKRUPTCY JUDGE

**WILCOX & FETZER LTD**
Registered Professional Reporters
(302) 655-0477
www.wilfet.com

2

APPEARANCES:

For the              ZACHARY I. SHAPIRO, ESQ.
Debtors             JOSEPH C. BARSALONA II, ESQ.
                    MARCOS A. RAMOS, ESQ.
                    RICHARDS, LAYTON & FINGER, P.A.

                    JOSEPH A. SHIFER, ESQ.
                    KRAMER LEVIN NAFTALIS & FRANKEL

Special             JOSEPH N. GROSS, ESQ.
Counsel to          STEPHEN M. FERGUSON, ESQ.
Debtors             BENESCH FRIEDLANDER COPLAN &
                    ARONOFF, LLP

For the DDTL        ROBERT J. DEHNEY, ESQ.
Parties             MORRIS NICHOLS ARSHT & TUNNELL

                    GARY L. KAPLAN, ESQ.
                    MATTHEW M. ROOSE,ESQ.
                    FRIED, FRANK, HARRIS, SHRIVER &
                    JACOBSON LLP

For the             NORMAN N. KINEL, ESQ.
Committee of        NAVA HAZAN, ESQ.
Unsecured           SQUIRE PATTON BOGGS (US) LLP
Creditors
                    CHRISTOPHER M. SAMIS, ESQ.
                    DAVID R.  KUNEY, ESQ.
                    WHITEFORD TAYLOR & PRESTON LLC

For CE Star &       ELIZABETH S. JUSTISON, ESQ.
the Ad Hoc          YOUNG CONAWAY STARGATT & TAYLOR
Noteholders
                    JASON P. RUBIN, ESQ.
                    AKIN GUMP STRAUSS HAUER & FELD

For Wells           ERIC LOPEZ SCHNABEL, ESQ.
Fargo               ALESSANDRA GLORIOSO, ESQ.
                    DORSEY & WHITNEY

For the U.S.        LINDA CASEY, ESQ.
Trustee             JACLYN WEISSGERBER, ESQ.


(TELEPHONIC APPEARANCES:)

For the             ADAM ROGOFF, ESQ.

```
For Prolstar     PETER J. BUENGER, ESQ.
Partners         CURTIS, MALLET-PREVOST, COLT &
                 MOSLE LLP

For Steel        NEIL GREGORIO, ESQ.
Workers          TUCKER ARENSBERG
Pension Trust

For the DDTL     NANCY M. BELLO,ESQ.
Parties          FRIED, FRANK, HARRIS, SHRIVER &
                 JACOBSON LLP

For Trevor       JACK A. RAISNER, ESQ.
Miller           OUTTEN & GOLDEN LLP
                         -  -  -

Transcribed by:  SUSAN ARNOLD YODER RPR, CRR
                 9 Myrtle Avenue
                 Morton, Pennsylvania 19070
                 Ph: (215)913-3336
                 Email:  S_arnold@hotmail.com
```

Proceedings recorded by electronic sound recording, transcript produced by transcriptionist.

-  -  -

THE COURT:  Good morning.

MR. SHAPIRO:  Good morning, Your Honor.  For the record, Zach Shapiro, Richards, Layton & Finger, here today on behalf of the debtors.

We have a few items on today's agenda.  What I would propose, Your Honor, is to take them slightly out of order.  In particular I would propose to have the WARN settlement motion go first, and then after



**WILCOX & FETZER LTD**
Registered Professional Reporters
(302) 655-0477
www.wilfet.com

that we can proceed in the order of the agenda with the conversion motion going first.

THE COURT:  Okay.

MR. SHAPIRO:  Thank you, Your Honor.  With that I'll turn the podium over to the Benesch firm and Mr. Joe Gross, who's handling that matter.

THE COURT:  Okay.

MR. GROSS:  Good morning, Your Honor.  Joe Gross, special WARN Act counsel to the debtors.

We proposed that the Court finally approve the settlement motion.  I think Jack Raisner, who's class counsel, is also on the phone and supports this motion.

We have -- we had two objections which I filed on the vacation and severance portion.  There were no objections to the WARN portion of the settlement.

One of the two objections to the vacation and severance from Mr. Cartrell Grey called me yesterday and withdrew his objection, so I can represent to the Court that happened.  He didn't have email access, so I don't have it in writing, but he did

leave me a voice mail, which I've transcribed, which I could read it to you if you want.

THE COURT:  That's fine.  I'll take your representation to the Court as an officer of the court.

MR. GROSS:  Okay.  So the one remaining objection is from Mr. Powers, and I understand he's on the phone, and he can speak his piece.

THE COURT:  All right.  Mr. Power or Powers.

MR. POWERS:  Yes.  It's Roger Powers.  My objection to it is that the settlement statement provides payment in full of accrued vacation, and I do not agree with the calculations because they are not using anything in the year that we were currently working, and you accrue vacation as you work throughout the year.

Now, it may not be available to be taken until the following year, but you build that up during the previous year.  So all of us were building vacation, so we had accrued vacation.

THE COURT:  All right.  Thank

you.  Yes, I read your papers, and I read the debtors' reply.

Will you respond, please, Mr. Gross?

MR. GROSS:  Yes.  And I would be glad to examine, cross-examine Mr. Powers.

But Mr. Blaney, who was the former CFO of the company, did some research into Mr. Powers' belief, and he, in his reply, he found out that that's just not true.  And he provided the Court with his declaration the exact salaried vacation policy, which says that employees, salaried employees, much the same as hourly employees, earn their vacation on January 1st.  If they didn't work until January 1st, they did not get the vacation for that year.  And then they had to use that vacation through the year, and if they didn't use it all, they lost it.  It's plain.

THE COURT:  So if a situation arises where an employee works until December 30th --

MR. GROSS:  Yes.

THE COURT:  -- and then quits --

ATTORNEY 2:  Correct.



**WILCOX & FETZER LTD**
Registered Professional Reporters
(302) 655-0477
www.wilfet.com

THE COURT:  -- they don't, under the employee handbook and the way the company operated, they do not get paid for any of that accrued earned vacation for that time period?

MR. GROSS:  There was no such thing as accrued vacation.

THE COURT:  Right.

MR. GROSS:  The accrual came on January 1st.

THE COURT:  Okay.  So if I -- so if January 1 comes, I earn my vacation --

MR. GROSS:  Get it all.

THE COURT:  -- that I earned from the previous year from my employment term the previous year.  I can then use it that year.

MR. GROSS:  Through the year, correct.

THE COURT:  Now, was it company policy to then pay people for unused vacation?

MR. GROSS:  For that year.

THE COURT:  For that year.

MR. GROSS:  Correct.

THE COURT:  So if I were fired on January 2nd, I would get paid for three weeks of vacation or four?

MR. GROSS: If you earned three weeks, if the person earned three weeks on January 1 and they quit January 2, they would get three weeks of vacation.

THE COURT: All right. Mr. Powers, do you any response to that?

MR. POWERS: Well, the only thing I can say is that Mr. Blaney produced this document Policy No. 40, which I had never seen. I worked there for 17 years and never seen this Policy 40.

THE COURT: Is Mr. Blaney in the courtroom?

MR. GROSS: No.

THE COURT: All right. Well, I'm going to overrule the objection based on the declaration of Mr. Blaney, which I am admitting into evidence. And it's basically on the testimony that hasn't been refuted that the company policy was just as described, which was there was no actual accrual of vacation, i.e. can't use it until the beginning of the calendar year where you accrue it from service the previous year.

So I believe the termination date

was approximately May 2016.

MR. GROSS:  2016, that's correct.

THE COURT:  2016.  So Mr. Powers is being paid, I believe, under the settlement for vacation not taken earned in 2015, but not for any benefit for anything that was quote/unquote earned in 2016.

MR. GROSS:  That is correct, Your Honor.

THE COURT:  All right.  I think that's appropriate under the facts and circumstances of the case, and I will overrule the objection.

MR. GROSS:  Thank you.  I can go through the --

THE COURT:  It's unnecessary.

MR. GROSS:  Okay.  Thank you.

THE COURT:  Does anyone else wish to be heard in connection with the matter?

Mr. Raisner, any comments?

MR. RAISNER:  Your Honor, thank you.  I would just like to note a couple of things.  There are several reasons why the settlement was an excellent one in our view. One is the unanimous approval of the class as

marked by the absence of a single objection.

Another mark of excellence is the parties fought hard and worked hard to reach the settlement -- interest in the employee reserve escrow.  Every dollar was fought over.

But there's another factor that contributes to the excellence, Your Honor, which we as plaintiffs do not take any credit for, but which we would like to note.  Credit should go to debtors, the secured parties, and the asset purchaser, who as of the purchase sought to segregate funds that could pay the employees' claims.

And this stroke contributed materially, in our view, not only to the facts of the settlement, but the speed by which it was accomplished amidst a fairly contentious case.  The estate won't have to go on dragging along the weight of an expense of a WARN class action and other employee claims, and the segregation in our view therefore was a truly value-added move.

And it benefited not just the employees but all the parties and stakeholders.  It made every dollar coming to

the employees worth that much more because it is coming sooner rather than later, frees up untold dollars of carrying costs for the defense of the WARN claims for the creditors, and so it should not be lost on anyone that this value-added feature underlying this settlement is both unusually excellent and noteworthy.

And so when we say that we appreciate the efforts of all the parties to reach this and consummate this settlement, we say that with an extra measure of gratitude.

And I believe that we all stand in accord in our gratitude to the Court for its approval of this standstill over the past several months in order that we could reach this day.  Thank you.

THE COURT:  Thank you, Mr. Raisner.

Anyone else?

MR. GROSS:  Thank you, Your Honor.  Mr. Shapiro and I were speaking just before the hearing.  We have one slight change, and that is with regard to the effective date of the agreement.  And I'll let



Mr. Shapiro say that.

MR. SHAPIRO:  Under the terms of the agreement, Your Honor, you can waive or amend the agreement by a signed writing also and, to the extent it affects the noteholders, their consent.  So one of the requirements in order for the effective date of the settlement to occur is that the order become final such that the appeal period has expired.

So the parties have all agreed to waive that requirement, so we will enter into an amendment and file that on the docket just so everyone is aware.  So I wanted to make sure the Court was aware of that just for purposes of disclosure.

THE COURT:  When do you plan to do that?

MR. SHAPIRO:  As soon as we can document it.  Hopefully tomorrow.

THE COURT:  Well, if I convert the case, you lose your power to act on behalf of the estate.

MR. SHAPIRO:  I agree with that, Your Honor.  And we can get to that when we get to that part of the motion.  But one thing



that's very important, Your Honor, is we are holding onto $4.6 million, and we need to make sure in order to make sure this settlement is effectuated, that that money go out and go to the right people.  So --

THE COURT:  Well, I agree.  I'm just wondering why, we've had four months to get this ready to go, and why you're at the last minute making a change that means the Court is put in a position of perhaps not being able to rule yet again on the motion to convert after I gave you this time for this specific purpose of allowing you to get this WARN Act settlement done.  Why aren't you finished?

MR. SHAPIRO:  I completely understand.  I understand your frustration, Your Honor.  Literally it will be a one-page document that effectuates this.

THE COURT:  Well, then it doesn't need till tomorrow.  Let's get it done today. We'll take a recess.

MR. SHAPIRO:  Sure.  No problem. We'll be able to get that done.

THE COURT:  Well, we don't need



to take that recess right now, but this needs to get done.

MR. SHAPIRO:  Okay.  Understood, Your Honor.  We do have a form of order.  I don't know --

THE COURT:  Can I sign the order even though --

MR. SHAPIRO:  Yes.

THE COURT:  Even though there's something subsequent that has to happen?

MR. SHAPIRO:  Your Honor, it would be under the terms of the agreement.  It wouldn't be pursuant to any kind of modifications that would be required to the order.

THE COURT:  All right.  Any changes to the order --

MR. GROSS:  No.

THE COURT:  -- other than the one I saw in the docket?

All right.  Please approach.

MR. GROSS:  May I approach?

THE COURT:  Yes.  Thank you.  I just asked you if there were any changes now that you've handed me a redline.


WILCOX & FETZER LTD
Registered Professional Reporters
(302) 655-0477
www.wilfet.com

(Inaudible.)

Okay.  I've signed the order.

MR. SHAPIRO:  Thank you, Your Honor.

THE COURT:  You're welcome.

MR. SHAPIRO:  Now turning to the conversion motion, I'll be brief, at least at the beginning.  I think I speak for everyone in this room including you that I think we're tired.  I think the case has come to its end. It's hard to imagine that we're here fighting with Your Honor over something like this, something that just seems so clear and so fundamental.  But I'll get back to that.

I think this case, Your Honor, has been successful in some respects and a tough case in some respects as well.  It was successful in that we were able to get our sales approved, and as part of that process we saved jobs and maintained other businesses including the vendors and customers that rely on these businesses and also successful in that we were able to negotiate a reserve to pay for employee claims, and today Your Honor approved that settlement, allowed that money

to go out to those employees.

But it was unsuccessful in the sense that the settlement that was reached with the committee and certain of our lenders was denied, and due to reasons completely out of our control the process to get from filing of the motion to ultimately to denial took a lot longer than anyone had originally anticipated or budgeted for.

And during that time our shoestring budget, our thin wind-down budget was completely depleted, such that several months ago in May when Your Honor denied the settlement we were administrative insolvent then or at a minimum on the brink.  And we said at that hearing, Your Honor, that we were going to convert or dismiss.  A plan was never on the table.  And even Your Honor said that you anticipated that conversion or dismissal to happen very soon one way or the other.

But notwithstanding that, the committee with eyes wide open as to the status of these cases and complete lack of funding, appealed.  And the committee demanded that we stay in Chapter 11 indefinitely until the

appeal was done. And it told us that our expenses were de minimis, that we can just ignore them or just work for free like they have chosen to do. And as to their motives, I can save that for later if I need to address them.

But, Your Honor, as you know, based on the fact we are here today, we refused. We are out of money. And while the committee counsel thinks that they can require debtors' counsel to work without compensation, a debtor in possession, even a nonoperating debtor in possession like ours, has costs. For example, we have to have a director. He or she needs to be paid. I assume he or she will require insurance. We have to file MORs. The person that prepares them must be paid. We have to pay UST fees. And we have to complete and file tax returns. The person or firm that prepares those and files those also must be paid.

So we can't, Your Honor, just agree to sit in Chapter 11 indefinitely with no means of paying those costs. And while Mr. Kinel thinks he can force us to work for

free, I don't think he can force those other people to work for free.

And while I don't want to put words in Ms. Casey's mouth, I know she's very capable of speaking for herself, I don't think she's going to tell me that we don't need to file MORs or pay UST fees.

And I don't know if Mr. Benson is on the phone or in the courtroom from the IRS. I don't think he's going to tell us that we can't -- that we don't have to file tax returns.

So we said, look, we need to convert.  We can't sit in an administratively insolvent state knowing that it's going to get even more administratively insolvent as we wait for the appeal to conclude.

Further, given the debtors' causes of action, causes of action that the debtors currently have no wherewithal to prosecute, we just can't sit and wait while the statute of limitations gets closer and closer to expiring.

But at the same time we had more to accomplish, and that was the WARN Act

settlement, and we were getting very close to resolving that one.

As Your Honor may recall, as we were getting to the first conversion hearing I had asked for a brief adjournment so that we could potentially document that, and Your Honor granted it, although I think you would admit it was somewhat reluctant. You said, look, don't come back to me unless you have a signed-up deal. And even if a signed-up deal, you said we still might get that adjournment.

But we got that signed-up deal. And as part of that deal we got an additional $410,000 in funding from our secured notes. And importantly, that funding was more than double what the Benesch firm spent in connection with the WARN litigation. So that funding covered accrued fees and expenses and what we had hoped to be the go-forward fees and expenses.

The idea, and, to use Your Honor's words, this was going to be a state neutral or a state positive. And, to use Your Honor's words, that was huge. And that's what we hoped it would be, Your Honor. But it

wasn't.  It wasn't sufficient.  And, frankly, Your Honor, it was largely due to the committee's conduct.

A few weeks ago after we filed our conversion motion, months after we filed our conversion motion, months after they objected, they served us with extensive discovery, including a deposition notice that resulted in discovery disputes which are resolved and a deposition.  We can get into the bona fides of that discovery if we need to, but ostensibly it was issued only after the debtors refused to withdraw or adjourn the conversion motion.

And then, Your Honor, as a result of all that, the balance of the funding that was designed to be a state neutral or potentially state positive was gone.  And as Mr. Kinel said, given that there's $0 in the estate, there's nothing left.  And even excluding the committee's professional fees, which exceed more than $500,000, which will never be paid, the debtors are in the hole and will be more in the hole day by day.

So here we are, Your Honor.  We

are without reasonable dispute

administratively insolvent.  Even, Your Honor,

the committee doesn't dispute it.  Just look

at their objection.  Specifically look at

their objection to debtors' counsel's notion

withdraw.  The primary basis upon which they

are objecting to that motion is that it will

be impossible to get replacement counsel

because the debtors can't pay them.  Yet they

are apparently disputing that we are

administratively insolvent.

And we think, Your Honor, on top

of all that, regardless of the state of

affairs of this debtor, we believe we just

have the right to convert.  And to the extent

there is a burden that we must meet to get

there, we believe we've met that.  The

undisputed record shows that we met that.

And we don't honestly, Your

Honor, think there's any evidence that we need

to present.  In fact, the bankruptcy rules

don't even list the motion to convert as a

contested matter.

That said, as Your Honor may have

seen late last night, I don't know if you had

a chance to read it yet, but we did file a declaration.  We did that largely as a protective measure.  And to the extent Your Honor thinks we need evidence, we would prepare to move it in subject to cross-examination by any party.

And with that, Your Honor, I'll turn the podium over to whoever else unless you have any questions.

THE COURT:  I have no questions.  Thank you.

MR. SHAPIRO:  Thank you.

THE COURT:  Mr. Kinel.

MR. KINEL:  Good morning, Your Honor.

I think it's fair to say that the debtors have all but conceded that this is really all about attorneys' fees, that as long as somebody is willing to write a check and let the case continue --

THE COURT:  So what is it about attorneys' fees that somehow makes them not allowed administrative expenses that have to be paid?

MR. KINEL:  Well, Your Honor --



THE COURT:  Is there a second class or a lower class for lawyers who work hard and do what they're supposed to do and get their fees approved by the Court as reasonable under 330 somehow don't get paid just because they're lawyers?

MR. KINEL:  Your Honor, we have a fully briefed appeal sitting --

THE COURT:  That can take months.

MR. KINEL:  -- in district court.

THE COURT:  That can take months. Judge Andrews is very busy.  Fully briefed as of what, two weeks ago?  A week ago?

MR. KINEL:  Two weeks ago, yes.

THE COURT:  Do you have oral argument that's scheduled?

MR. KINEL:  I'm sorry?

THE COURT:  Has oral argument been scheduled?

MR. KINEL:  No, it has not.

THE COURT:  That can take months.

MR. KINEL:  Your Honor, I don't know what the schedule will be, but I do know that this case has, as the debtors claim, languished in Chapter 11 for a very long time



for specific purposes, and this is admittedly a case with no business, no operations, no need to -- or no recurring costs other than U.S. Trustee fees and --

THE COURT:  And attorneys' fees.

MR. KINEL:  And attorneys' fees for what?  There's nothing --

THE COURT:  Well, responding to your discovery, for one thing.

MR. KINEL:  They had sufficient funding --

THE COURT:  Your fees, your half a million dollars worth of fees, which if I allow are administrative expenses of the estate in prosecuting the appeal.

MR. KINEL:  That's correct. However, we have not insisted on payment of those fees.

And, you know, the word "administrative insolvency" is uttered like it's a hydrogen bomb.  There's nothing in the code that says that a case that is near or at administrative insolvency has to be converted Chapter 7.  I don't think that's the case.

Here, unlike what Mr. Shapiro

says, we're not disputing how much money is in the estate or that the estate is nearly out of money.  It's perfectly clear, as we learned from the deposition we took last week, the debtors only requested enough money to prosecute the WARN action to conclusion, never considered seeking additional funds so that they could either participate in the appeal or at least maintain the estate in a state of hibernation while the appeal was pending, which is all that is necessary.

Simple due process just mandates that the case, which has been around for a long time, sat around for many months waiting for Jevic, sat around many months waiting for the WARN settlement to be approved, can sit around even if necessary for a number of more months until the district court issues its decision.  It's the only possibility of unsecured creditors receiving recovery in these cases.

Now, look, I understand it's a bit anomalous for me to be standing here asking Your Honor to allow a case to proceed so that the ultimate result would be, as we

hope, that the decision that Your Honor renders would be reversed and --

THE COURT:  That's not a problem.  I understand that.

MR. KINEL:  That's a difficult position, and it's unfortunate.

THE COURT:  I'm happy to be wrong.  I'm wrong all the time.  It really doesn't bother me when the district court reverses me.  The Third Circuit is another matter.

MR. KINEL:  As Your Honor may have seen --

THE COURT:  The district court I'm okay with.

MR. KINEL:  As Your Honor may have seen, we filed a motion for certification of the Third Circuit, which has --

THE COURT:  Yes, I saw that, for direct appeal.

MR. KINEL:  Which has not been ruled upon as of yet.

Your Honor, we do not believe that the debtors have an absolute right to convert.  We think that there are exceptions



in the law starting with the Supreme Court Marrama case. I'm going to save the legal argument on the different points for later, assuming that we go forward with the hearing as anticipated, or I will make them now.

But we think that there are three considerations for today based on the briefing before Your Honor. First is whether there is or is not an absolute right to convert the cases. We say there is not.

Second, if there is no absolute right to convert, what is the appropriate legal standard? We submit that there is an exception for bad faith, inequity, or detriment to parties in interest, and we think we have elements of some or all of those.

And the third issue is factual, has the standard been met, and has the standard been met to show that it fits within the exceptions to the debtors' right to convert, and we believe that at the end of the evidentiary hearing today that we will be able to demonstrate that there really is no basis why this case has to be converted right now.

Your Honor also is not presented

necessarily with a binary decision.  It certainly, the fact that we're here today, as a matter of fact, is happenstance.  When we were last here it was anticipated this hearing might not occur until sometime in mid or late October.

The conversion, if the end of this case is conversion, then it doesn't have to happen today.  It can be put on hold.  It can be -- there have been instances in this district where cases have been closed for administrative purposes but have otherwise been left open.

So there are ways to preserve the committee's due process rights in this appeal, we believe, even if the Court is inclined to convert the cases as a factual or legal matter.

And so we believe that the debtors need to make a record here, and I will speak to their declaration in a moment.  But I think I should pause just to see how Your Honor wants to proceed from here.

THE COURT:  Let me hear from other parties and see what they have to say.

MR. KINEL:  Thank you.

MS. CASEY:  Good morning, Your Honor.  Linda Casey --

THE COURT:  Good morning.

MS. CASEY:  -- on behalf of the U.S. Trustee.

Before I begin I would like to take a moment to introduce my new colleague, someone I know you're familiar with.  A new trial attorney at our office is here today, Jackie Weissgerber.

THE COURT:  Yes, of course.

MS. CASEY:  Welcome to her.

THE COURT:  Good to see you.

MS. CASEY:  Your Honor, the U.S. Trustee did not file an objection to the motion to convert and in fact would have filed their own motion to convert if this wasn't on the record.  We even had a very difficult time not pressing for the motion to convert to go forward several months ago rather than letting this WARN Act go forward.

Part of the reason we didn't was the assurances that it would be a state neutral, and we find out today that despite

the best guesses it ended up not being a state neutral and we actually have gotten more into the hole as we've gone forward.

We do actually have an objection to the proposed conversion order that was filed last night. We don't think it should be conditional. We think the conversion should be effective today.

If there are reasons, if there are steps that the estate needs to take before the order is entered, we think that the conversion order should be entered as an actual order converting it at the appropriate time. There are things that have to occur. Trustees have to be appointed. We don't want it to be filed on Friday night after hours and have nobody in charge of the estate.

We do think it needs to be filed and have it be effective. So if there are steps that need to be taken, then we think the order should be entered at that point. We do think there should be a tight rein on it.

We think it should be today, and if not today, tomorrow or Friday or Monday. It shouldn't be pushed off for weeks into the

future. We already have an administratively insolvent estate, so we do object to that.

And we certainly object to this idea of some sort of keeping it in bankruptcy but not really in bankruptcy. There is really no such thing as a Chapter 7 in Chapter 11. The trustee can come in. If there's no assets he can do a no asset and close the case. If there are assets he can protect them and preserve them and move forward with them and not continue to have these Chapter 11 admin expenses continue to add to it.

I think that the U.S. Trustee's office had a little bit of a misunderstanding with the settlement agreement. We thought maybe the committee counsel's fees were chopped off under the settlement and now they're continuing to continue these Chapter 11 admin fees for when a Chapter 7 trustee comes over.

So we just think the record is clear, there's nothing left to be doing in a Chapter 11. It needs to convert, and the conversion order needs to be a final order that actually converts the case.

WILCOX & FETZER LTD
Registered Professional Reporters
(302) 655-0477
www.wilfet.com

THE COURT:  Thank you.

MS. CASEY:  Thank you.

THE COURT:  Mr. Kaplan.

MR. KAPLAN:  Good morning, Your Honor.

THE COURT:  Good morning.

MR. KAPLAN:  Gary Kaplan from Fried Frank on behalf of the DDTL parties.

Just a couple of points, Your Honor.  First, as you may recall when we were here last time and we agreed to the adjournment for the WARN settlement, one of the concerns I raised was that the committee not run up expenses on this estate.  And Your Honor said we can deal with that on fee applications.

And, unfortunately, our fear was well-founded.  I didn't know that a conversion motion in an undisputed administratively insolvent estate was going to require depositions and discovery disputes and a lot of pleadings.  And so, exactly as the U.S. Trustee said, our hope and agreement to that was that it was a state neutral to a state positive.  We didn't know that the committee

was going to continue to dig this into a deeper and deeper hole.

The committee's view, though, also is that, well, hopefully Judge Andrews will decide very soon and then everything will be hunky-dory and we can move on. That's just step one. Even in the extremely unlikely circumstance that Judge Andrews totally reverses Your Honor and says, no, completely wrong, and in fact says the settlement is now alive, doesn't remand or anything because if it's a remand then we're back to another evidentiary hearing, but says, nope, Your Honor was completely wrong, there's likely going to be an appeal up to the Third Circuit and maybe further.

Jevic took how many years before it was finally decided. So just saying, well, wait because maybe in a few weeks Judge Andrews will set an oral argument and then we'll have a ruling maybe this year doesn't get us anywhere. All it does is keep the administrative burn going and going.

The debtor, as they said -- I'm amazed that Mr. LaForge has stuck around so

long, that they've kept the director here on this. At some point I assume they're going to let him run for the hills. And they have other people who they keep paying to do their monthly operating reports and to keep up with their reporting.

It's really time to end this. We have been saying that for many, many months. The committee is running up expenses for the estate. We, one who didn't get any benefit of their quote/unquote settlement, we have to keep spending money.

So we not only lost -- our clients not only lost tens and tens and tens of millions of dollars with no hope of recovery, they're being forced by an administratively insolvent estate where the committee who's not getting paid for whatever reason is just continuing to burn and make our clients continue to spend money and money and more money.

And if it turns out there are real claims, then Mr. Kinel is going to get up and say they're just afraid they're going to get sued. You know what? Those were

purchased by the noteholders.  If they believe they have standing to pursue them and they have those claims, my client is a target regardless.

So this has nothing to do with it.  This is just about finally putting an end to these cases and stopping the administrative burn.  Thank you, Your Honor.

THE COURT:  Thank you.

Okay.  Here's how we're going to proceed:  I do not believe that an evidentiary hearing is required.  I find and rule that the debtors have an absolute right to convert these cases.  Cause does not need be established, nor are there any exceptions.

I think the Marrama case deals with a very different set of circumstances and is not applicable to the conversion of a Chapter 11 business case to a case under Chapter 7.

There's no dispute nor can there be a dispute that these debtors are eligible to be debtors under Chapter 7.  That, of course, is the key issue in Marrama, whether that debtor could be eligible under Chapter

13.   The Supreme Court found that if you're not eligible to be a debtor under Chapter 13, which that debtor was not, then you don't have an absolute right to convert to Chapter 13. It makes a lot of sense.

There is no dispute nor could there be a dispute that this debtor is not eligible to convert to Chapter 7.  So I don't need evidence.  I don't think an evidentiary record is required.  I think the debtors have the right to pursue this.

Assuming arguendo, if we're going to have evidence, I think it would be very difficult for the committee to dispute a record that has been established over months of this case, and the key issue for me continues to be administrative insolvency.

While I agree with Mr. Kinel that there's nothing in the code that specifies that of course the case has to be administratively solvent to remain in Chapter 11, it has been a long-time practice of this judge and I think my colleagues on this bench that they will not allow a Chapter 11 case to proceed in an administratively insolvent

manner.  I think it's irresponsible of the court.

And while it's easy to pick on lawyers and other professionals as somehow being a lower species of administrative expense claimants not entitled to payment, the reality is that the lawyers and other estate professionals including the committees of professionals work very hard.  They get paid well, but they're extremely talented, highly competent lawyers and financial professionals who earn the money they make.

And if the Court finds that those fees and expenses are reasonable under 330 or 331, then they're allowed administrative expenses, and they're as valid as any other allowed administrative expense, including for the wages of -- postpetition wages of employees or the postpetition provision of goods and services by vendors.  They are valid claims.  And there's no question that they have continued to rack up at a pace that is beyond the ability for this estate to proceed -- or to pay.

There may not be a fix for this

in Chapter 7.  The case may end up being dismissed as a no-asset case or it may otherwise end up on sort of the ash heap of a Chapter 7.

But an independent Chapter 7 trustee who can look at the assets, look at the liabilities, decide whether to pursue Chapter 5 causes of action if there are any or any other causes or action can make that decision, hopefully in short order.  And our panel of trustees are extremely competent at making those decisions in short order and figuring out whether to pursue a case or not.

So I will convert the case.  The question is when.  This really goes to the nub of Mr. Kinel's point and also goes to Ms. Casey's comments about the order.  I am not willing to delay conversion for days, months -- days, weeks, months, years, however long it might take an appellate process to work its way through.

As Mr. Kaplan noted, assuming the certification of direct appeal is denied, the district court is just the intermediate appellate court.  And I don't know what might

**WILCOX & FETZER LTD**
Registered Professional Reporters
(302) 655-0477
www.wilfet.com

happen in the event Judge Andrews reverses me and whether someone who has the money and skin in the game wants to appeal that or if he affirms me and someone wants to appeal. It could go either way, and it could also go up to the Third Circuit. That, of course, I mean, we're all professionals. We've all dealt with this our whole lives. That's a nine-month process minimum from filing your notice of appeal to getting a decision from the Third Circuit.

So that's just the reality of how long it takes justice to work its way through our system. And it's not meant as a criticism to any judge. These things take time. So I'm just not going to let the case continue.

And that raises the issue of what effect this conversion might have on the appeal. So some of the issues that were raised in the briefing were whether this court has jurisdiction to convert. Given the pendency of the appeal, I don't think there's any question or can be any reasonable question that I don't have jurisdiction. I clearly have jurisdiction to continue to manage the

case, and that would include converting the case to Chapter 7. At most it's tangentially related to the appeal and I think is not even tangentially related to the appeal.

Certainly I don't have jurisdiction to resurrect the appeal or resurrect the settlement motion or change my mind without leave of the appellate court, but that's not what's going on if I convert the case.

Then the other question is whether the committee will continue to exist post conversion or whether it will dissolved. Per the briefing on that, I've looked into that myself.

Personally I will say this without deciding it because I don't think there's a reason I have to decide it, and it probably might be a more appropriate issue for Judge Andrews to decide whether the committee still has standing to go forward with this appeal.

But in my mind the cases are legion and overwhelmingly in support of the proposition that upon conversion the committee

ceases to exist.  Judge Walsh, and it doesn't get much more gold-plated in this jurisdiction than an opinion by Judge Walsh, but Judge Walsh ruled that in World Health Alternatives, stating, of course upon conversion of the cases to Chapter 7 the committee will cease to exist, and he cites a number of cases.  And there are numerous other cases in other districts that hold the same.

I don't think the order needs to address that, the order converting the case. It is or it isn't going to happen by operational law, and I'll allow that to be argued to the extent it's relevant either in this court or some other court.

With regard to the effective date of the order, how long, Mr. Shapiro -- I agree with Ms. Casey.  We should specify a date. And I don't want to languish, but I want to give you the time to do the things that you've specified, both with regard to the WARN Act settlement, which might take today, might take even into tomorrow, and then you have the transfer of funds, et cetera.  So how long do you think that's going to actually take?

MR. SHAPIRO:  The primary issue really will be once the money is transferred out of the estate, it then goes to Wells Fargo as the indenture trustee, and then we want to make sure Wells then distributes it to everyone that they need to distribute it to, and it's that process that I'm concerned that I can't control.

I did speak with counsel to Wells last night.  Although I didn't get an affirmative answer, I should be able to get something.  We are completely fine with a hard deadline.  I'm sure we can work something out.  I can certainly work something out with Ms. Casey on that.  Also the DDTL parties raised the same concern.  Our intent obviously is not to sit here and wait and not get everything done.

THE COURT:  So if I were to enter an order today converting the case effective noon on Monday, would that give you enough time, or would you like more time than that?

MR. SHAPIRO:  I would -- maybe we could take a recess and I can speak with Wells' counsel about that.

THE COURT:  Yes.  That would be fine.  Let's make it relatively short because I have a telephone conference at 11:00.  If it's going to take longer than that to work out the details, that's fine, but we'll have to take a break for me to handle my 11:00 o'clock, which shouldn't take long.  It's EFH.  Who knows.  And we can reconvene.  We can reconvene after that.

So we'll take a recess?

MR. SHAPIRO:  Sure.

THE COURT:  Okay.

MR. SHAPIRO:  Thank you.

(A brief recess was taken.)

THE COURT:  Hello again.

MR. SHAPIRO:  Hello again.  We were able to reach agreement on a form of order, Your Honor.  Rather than having the conditions effective date be effective upon certain things and us filing a notice, the effective date of conversion will be October 2, 2017 at 5:00 p.m. with the understanding in the event that we're unable to get all the wires -- we're going to try our best.  We think we're going to be able to get

it done.  But if we're unable to, we may reach out to the Court and seek some kind of relief just in case.

I understand that -- I spoke with the other parties.  The UST is not going to take a position, from what I understand, but Mr. Kaplan won't object to any kind of extension to the extent we need it.

And then one more kind of related item --

THE COURT:  This will also give you time to document the issue with regard to the effective date.

MR. SHAPIRO:  I have good news on that front.

THE COURT:  Oh.

MR. SHAPIRO:  It may actually already be filed.  We were quick.

THE COURT:  Okay.  Excellent.

MR. SHAPIRO:  So yes.

THE COURT:  Good.

MR. SHAPIRO:  We heard you loud and clear on that.

THE COURT:  Sorry.

MR. SHAPIRO:  So and then there's



**WILCOX & FETZER LTD**
Registered Professional Reporters
(302) 655-0477
www.wilfet.com

one other sentence we added, and it's really just, kind of the reason why is because in order to make draws from this escrow, we need to send a disbursement request to the escrow agent, so we did include language to the extent there was a pending disbursement request as of the conversion date, nothing in this order including the conversion affects that pending disbursement request.

THE COURT:  Fair enough.  That's fine.

MR. SHAPIRO:  Okay.

THE COURT:  I assume that's fine, Ms. Casey.

MS. CASEY:  No objection.

THE COURT:  Okay.

MR. SHAPIRO:  If I may approach, Your Honor.

THE COURT:  Yes, please.

Anything else?

MR. SHAPIRO:  Yes.  So there were two other items on the agenda.  There was our motion to withdraw as counsel, but, as the motion itself stated and I believe the agenda, we were only seeking to do that in the



**WILCOX & FETZER LTD**
Registered Professional Reporters
(302) 655-0477
www.wilfet.com

alternative in the event that Your Honor denied our motion to convert.  So because Your Honor granted the motion to convert, we're not going forward with the motion to withdraw as counsel.

We do have for the debtors' professionals, I understand the committee filed a supplement late last night, so to the extent they intend to submit a fee order, they're going to do so themselves.  But I do have an order allowing the debtors' professionals fees.

THE COURT:  Yeah.  I'm not going to sign that.  I'm going to give the Chapter 7 trustee an opportunity to review the professional fees and take whatever position the Chapter 7 trustee wants to take.

MR. SHAPIRO:  Could I make a suggestion to the extent Your Honor is open to it?

THE COURT:  Sure.

MR. SHAPIRO:  I hear you loud and clear on that.  All of the money that's being paid to the professionals from this order is coming from nonestate assets and escrows.  If

we made the order an interim order, made it clear that it's subject later to objection and disgorgement, would it be all right at least to authorize the outstanding balance to be paid?

THE COURT:  I really prefer not to do that because it really goes to whether the fees should be allowed in the first instance as opposed to necessarily the source of the funding.  And I'm certainly sensitive to the fact that you haven't been paid, but I really do want to give the Chapter 7 trustee an opportunity to be heard.

MR. SHAPIRO:  Okay, Your Honor. I understand.  Thank you.

THE COURT:  Sorry.

Anything else?

MR. SHAPIRO:  That's it.

THE COURT:  All right.  Thank you.  We're adjourned.

(The hearing adjourned at 11:48 a.m.)



**WILCOX & FETZER LTD**
Registered Professional Reporters
(302) 655-0477
www.wilfet.com

CERTIFICATION


I, SUSAN ARNOLD YODER, transcriber, certify that the foregoing is a correct transcript, to the best of my ability, from the official electronic sound recording of the proceedings, in the above-entitled matter.

IN WITNESS WHEREOF, I have hereunto set my hand and seal this 29th day of September, 2017, at Wilmington.




*Susan A. Yoder*

SUSAN ARNOLD YODER, RPR

**W&F**

**WILCOX & FETZER LTD**
Registered Professional Reporters
(302) 655-0477
www.wilfet.com

**Constellation Enterprises, LLC.**

**$**

**$0 (1)**
20:19

**$4.6 (1)**
13:2

**$410,000 (1)**
19:14

**$500,000 (1)**
20:22

**A**

**ability (1)**
37:23

**able (8)**
13:11,24 15:18,23
27:22 42:11 43:17,25

**absence (1)**
10:1

**absolute (5)**
26:24 27:9,11
35:13 36:4

**access (1)**
4:24

**accomplish (1)**
18:25

**accomplished (1)**
10:17

**accord (1)**
11:14

**accrual (2)**
7:8 8:21

**accrue (2)**
5:18 8:24

**accrued (5)**
5:15,24 7:4,6 19:18

**Act (6)**
4:10 12:21 13:14

18:25 29:22 41:21

**action (6)**
10:20 18:19,19
25:6 38:8,9

**actual (2)**
8:21 30:13

**actually (5)**
30:2,4 31:25 41:25
44:17

**add (1)**
31:12

**added (1)**
45:1

**additional (2)**
19:13 25:7

**address (2)**
17:5 41:11

**adjourn (1)**
20:13

**adjourned (2)**
47:20,21

**adjournment (3)**
19:5,11 32:12

**admin (2)**
31:11,19

**administrative (12)**
16:14 22:23 24:14,
20,23 28:12 33:23
35:7 36:17 37:5,15,17

**administratively (9)**
18:14,16 21:2,11
31:1 32:19 34:17
36:21,25

**admit (1)**
19:8

**admittedly (1)**
24:1

**admitting (1)**
8:18

**affairs (1)**

21:14

**affects (2)**
12:5 45:8

**affirmative (1)**
42:11

**affirms (1)**
39:4

**afraid (1)**
34:24

**after (8)**
3:25 13:12 20:4,5,6,
12 30:16 43:9

**again (3)**
13:11 43:15,16

**agenda (4)**
3:22 4:1 45:22,24

**agent (1)**
45:5

**ago (6)**
16:13 20:4 23:13,
13,14 29:21

**agree (6)**
5:15 12:23 13:6
17:23 36:18 41:17

**agreed (2)**
12:10 32:11

**agreement (7)**
11:25 12:3,4 14:12
31:15 32:23 43:17

**alive (1)**
33:11

**allow (4)**
24:14 25:24 36:24
41:13

**allowed (5)**
15:25 22:23 37:15,
17 47:8

**allowing (2)**
13:13 46:11

**along (1)**

10:19

**already (2)**
31:1 44:18

**also (10)**
4:15 12:4 15:22
17:20 27:25 33:4
38:16 39:5 42:15
44:11

**alternative (1)**
46:1

**Alternatives (1)**
41:4

**although (2)**
19:7 42:10

**amazed (1)**
33:25

**amend (1)**
12:4

**amendment (1)**
12:12

**amidst (1)**
10:17

**Andrews (6)**
23:12 33:4,8,20
39:1 40:20

**anomalous (1)**
25:23

**Another (4)**
10:2,6 26:10 33:12

**answer (1)**
42:11

**anticipated (4)**
16:9,19 27:5 28:4

**anyone (4)**
9:18 11:5,20 16:8

**anything (5)**
5:17 9:6 33:11
45:20 47:17

**anywhere (1)**
33:22

**Wilcox & Fetzer Ltd.**
www.wilfet.com          (302) 655-0477

**(1) $0 - anywhere**

| | | | |
|---|---|---|---|
| **apparently (1)** | 6:21 | 20:16 47:4 | 4:6 19:16 |
| 21:10 | **ARNOLD (1)** | **bankruptcy (3)** | **Benson (1)** |
| **appeal (20)** | 3:9 | 21:21 31:4,5 | 18:8 |
| 12:9 17:1 18:17 | **around (5)** | **based (3)** | **best (2)** |
| 23:8 24:15 25:8,10 | 25:13,14,15,17 | 8:16 17:8 27:7 | 30:1 43:25 |
| 26:20 28:15 33:15 | 33:25 | **basically (1)** | **beyond (1)** |
| 38:23 39:3,4,10,19,22 | **ash (1)** | 8:18 | 37:23 |
| 40:3,4,6,22 | 38:3 | **basis (2)** | **binary (1)** |
| **appealed (1)** | **asked (2)** | 21:6 27:23 | 28:1 |
| 16:24 | 14:24 19:5 | **become (1)** | **bit (2)** |
| **appellate (3)** | **asking (1)** | 12:8 | 25:23 31:14 |
| 38:20,25 40:8 | 25:24 | **before (5)** | **Blaney (4)** |
| **applicable (1)** | **asset (2)** | 11:23 27:8 29:7 | 6:7 8:8,12,17 |
| 35:18 | 10:11 31:8 | 30:10 33:17 | **bomb (1)** |
| **applications (1)** | **assets (4)** | **begin (1)** | 24:21 |
| 32:16 | 31:7,9 38:6 46:25 | 29:7 | **bona (1)** |
| **appointed (1)** | **assume (3)** | **beginning (2)** | 20:11 |
| 30:15 | 17:15 34:2 45:13 | 8:23 15:8 | **both (2)** |
| **appreciate (1)** | **assuming (3)** | **behalf (4)** | 11:7 41:21 |
| 11:10 | 27:4 36:12 38:22 | 3:20 12:21 29:5 | **bother (1)** |
| **approach (3)** | **assurances (1)** | 32:8 | 26:9 |
| 14:21,22 45:17 | 29:24 | **being (7)** | **break (1)** |
| **appropriate (4)** | **ATTORNEY (2)** | 9:4 13:11 30:1 | 43:6 |
| 9:11 27:12 30:13 | 6:25 29:10 | 34:16 37:5 38:1 46:23 | **brief (3)** |
| 40:19 | **attorneys' (4)** | **belief (1)** | 15:7 19:5 43:14 |
| **approval (2)** | 22:18,22 24:5,6 | 6:9 | **briefed (2)** |
| 9:25 11:15 | **authorize (1)** | **believe (12)** | 23:8,12 |
| **approve (1)** | 47:4 | 8:25 9:4 11:13 | **briefing (3)** |
| 4:13 | **available (1)** | 21:14,17 26:23 27:21 | 27:7 39:20 40:14 |
| **approved (4)** | 5:20 | 28:16,19 35:1,11 | **brink (1)** |
| 15:19,25 23:4 25:16 | **aware (2)** | 45:24 | 16:15 |
| **approximately (1)** | 12:13,14 | **BELLOESQ (1)** | **budget (2)** |
| 9:1 | | 3:5 | 16:11,11 |
| **argued (1)** | **B** | **bench (1)** | **budgeted (1)** |
| 41:14 | | 36:23 | 16:9 |
| **arguendo (1)** | **back (3)** | **benefit (2)** | **BUENGER (1)** |
| 36:12 | 15:14 19:9 33:12 | 9:6 34:10 | 3:1 |
| **argument (4)** | **bad (1)** | **benefited (1)** | **build (1)** |
| 23:16,18 27:3 33:20 | 27:14 | 10:23 | 5:22 |
| **arises (1)** | **balance (2)** | **Benesch (2)** | **building (1)** |

5:23

**burden (1)**
21:16

**burn (3)**
33:23 34:19 35:8

**business (2)**
24:2 35:19

**businesses (2)**
15:20,22

**busy (1)**
23:12

## C

**calculations (1)**
5:16

**calendar (1)**
8:23

**called (1)**
4:22

**came (1)**
7:8

**capable (1)**
18:5

**carrying (1)**
11:3

**Cartrell (1)**
4:21

**case (35)**
9:12 10:18 12:21
15:10,15,17 22:20
23:24 24:2,22,24
25:13,24 27:2,24 28:8
31:8,25 35:16,19,19
36:16,20,24 38:1,2,13,
14 39:16 40:1,2,10
41:11 42:20 44:3

**cases (11)**
16:23 25:21 27:10
28:11,17 35:7,14

40:23 41:6,7,8

**CASEY (10)**
29:2,3,5,13,15 32:2
41:18 42:15 45:14,15

**Casey's (2)**
18:4 38:17

**Cause (1)**
35:14

**causes (4)**
18:19,19 38:8,9

**cease (1)**
41:6

**ceases (1)**
41:1

**certain (2)**
16:4 43:20

**certainly (5)**
28:2 31:3 40:5
42:14 47:10

**certification (2)**
26:17 38:23

**cetera (1)**
41:24

**CFO (1)**
6:8

**chance (1)**
22:1

**change (3)**
11:24 13:9 40:7

**changes (2)**
14:17,24

**Chapter (28)**
16:25 17:23 23:25
24:24 31:6,6,11,18,19,
23 35:19,20,23,25
36:2,4,8,21,24 38:1,4,
5,8 40:2 41:6 46:14,
17 47:12

**charge (1)**
30:17

**check (1)**
22:19

**chopped (1)**
31:17

**chosen (1)**
17:4

**Circuit (5)**
26:10,18 33:15
39:6,11

**circumstance (1)**
33:8

**circumstances (2)**
9:12 35:17

**cites (1)**
41:7

**claim (1)**
23:24

**claimants (1)**
37:6

**claims (7)**
10:13,20 11:4
15:24 34:23 35:3
37:21

**class (5)**
4:14 9:25 10:19
23:2,2

**clear (6)**
15:13 25:3 31:22
44:23 46:23 47:2

**clearly (1)**
39:24

**client (1)**
35:3

**clients (2)**
34:14,20

**close (2)**
19:1 31:8

**closed (1)**
28:11

**closer (2)**

18:22,23

**code (2)**
24:22 36:19

**colleague (1)**
29:8

**colleagues (1)**
36:23

**come (3)**
15:10 19:9 31:7

**comes (2)**
7:11 31:20

**coming (3)**
10:25 11:2 46:25

**comments (2)**
9:20 38:17

**committee (16)**
16:4,22,24 17:10
21:3 31:16 32:13,25
34:9,18 36:14 40:12,
20,25 41:6 46:7

**committees (1)**
37:8

**committee's (4)**
20:3,21 28:15 33:3

**company (4)**
6:8 7:2,18 8:20

**compensation (1)**
17:11

**competent (2)**
37:11 38:11

**complete (2)**
16:23 17:19

**completely (6)**
13:16 16:5,12 33:9,
14 42:12

**conceded (1)**
22:17

**concern (1)**
42:16

**concerned (1)**

42:7

**concerns (1)**
32:13

**conclude (1)**
18:17

**conclusion (1)**
25:6

**conditional (1)**
30:7

**conditions (1)**
43:19

**conduct (1)**
20:3

**conference (1)**
43:3

**connection (2)**
9:19 19:17

**consent (1)**
12:6

**considerations (1)**
27:7

**considered (1)**
25:7

**consummate (1)**
11:11

**contentious (1)**
10:17

**contested (1)**
21:23

**continue (9)**
22:20 31:11,12,18
33:1 34:20 39:16,25
40:12

**continued (1)**
37:22

**continues (1)**
36:17

**continuing (2)**
31:18 34:19

**contributed (1)**

10:14

**contributes (1)**
10:7

**control (2)**
16:6 42:8

**conversion (23)**
4:2 15:7 16:19 19:4
20:5,6,14 28:7,8 30:5,
7,12 31:24 32:18
35:18 38:18 39:18
40:13,25 41:5 43:21
45:7,8

**convert (23)**
12:20 13:12 16:17
18:14 21:15,22 26:25
27:9,12,21 28:17
29:17,18,20 31:23
35:13 36:4,8 38:14
39:21 40:9 46:2,3

**converted (2)**
24:23 27:24

**converting (4)**
30:13 40:1 41:11
42:20

**converts (1)**
31:25

**Correct (6)**
6:25 7:17,22 9:2,8
24:16

**costs (4)**
11:3 17:13,24 24:3

**could (11)**
5:2 10:12 11:16
19:6 25:8 35:25 36:6
39:5,5 42:24 46:18

**counsel (9)**
4:10,14 17:10,11
21:8 42:9,25 45:23
46:5

**counsel's (2)**

21:5 31:16

**couple (2)**
9:22 32:9

**course (5)**
29:12 35:24 36:20
39:6 41:5

**COURT (101)**
3:16 4:3,8,12,23
5:3,4,5,10,25 6:11,20,
24 7:1,7,10,13,18,21,
23 8:5,12,15 9:3,10,
16,18 11:14,18 12:14,
16,20 13:6,10,20,25
14:6,9,16,19,23 15:5
22:10,13,21 23:1,4,9,
10,11,15,18,21 24:5,8,
12 25:18 26:3,7,9,14,
14,19 27:1 28:16,24
29:4,12,14 32:1,3,6
35:9 36:1 37:2,13
38:24,25 39:20 40:8
41:15,15 42:19 43:1,
12,15 44:2,11,16,19,
21,24 45:10,13,16,19
46:13,21 47:6,16,19

**courtroom (2)**
8:13 18:9

**covered (1)**
19:18

**credit (2)**
10:8,9

**creditors (2)**
11:4 25:20

**criticism (1)**
39:14

**cross-examination (1)**
22:6

**cross-examine (1)**
6:6

**CRR (1)**

3:9

**currently (2)**
5:17 18:20

**customers (1)**
15:21

---

**D**

---

**date (9)**
8:25 11:25 12:7
41:16,18 43:19,21
44:13 45:7

**day (3)**
11:17 20:24,24

**days (2)**
38:18,19

**DDTL (3)**
3:5 32:8 42:15

**de (1)**
17:2

**deadline (1)**
42:13

**deal (5)**
19:10,10,12,13
32:15

**deals (1)**
35:16

**dealt (1)**
39:8

**debtor (8)**
17:12,13 21:14
33:24 35:25 36:2,3,7

**debtors (16)**
3:20 4:11 10:10
18:20 20:13,23 21:9
22:17 23:24 25:5
26:24 28:20 35:13,22,
23 36:10

**debtors' (7)**
6:2 17:11 18:18

21:5 27:20 46:6,11

**December (1)**
6:22

**decide (4)**
33:5 38:7 40:18,20

**decided (1)**
33:18

**deciding (1)**
40:17

**decision (5)**
25:19 26:1 28:1
38:10 39:10

**decisions (1)**
38:12

**declaration (4)**
6:11 8:17 22:2
28:21

**deeper (2)**
33:2,2

**defense (1)**
11:4

**delay (1)**
38:18

**demanded (1)**
16:24

**demonstrate (1)**
27:23

**denial (1)**
16:7

**denied (4)**
16:5,13 38:23 46:2

**depleted (1)**
16:12

**deposition (3)**
20:8,10 25:4

**depositions (1)**
32:21

**described (1)**
8:20

**designed (1)**

20:17

**despite (1)**
29:25

**details (1)**
43:5

**detriment (1)**
27:15

**different (2)**
27:3 35:17

**difficult (3)**
26:5 29:19 36:14

**dig (1)**
33:1

**direct (2)**
26:20 38:23

**director (2)**
17:14 34:1

**disbursement (3)**
45:4,6,9

**disclosure (1)**
12:15

**discovery (5)**
20:8,9,11 24:9
32:21

**disgorgement (1)**
47:3

**dismiss (1)**
16:17

**dismissal (1)**
16:19

**dismissed (1)**
38:2

**dispute (7)**
21:1,3 35:21,22
36:6,7,14

**disputes (2)**
20:9 32:21

**disputing (2)**
21:10 25:1

**dissolved (1)**

40:13

**distribute (1)**
42:6

**distributes (1)**
42:5

**district (6)**
23:10 25:18 26:9,
14 28:11 38:24

**districts (1)**
41:9

**docket (2)**
12:12 14:20

**document (5)**
8:9 12:19 13:19
19:6 44:12

**dollar (2)**
10:5,25

**dollars (3)**
11:3 24:13 34:15

**done (7)**
13:14,21,24 14:2
17:1 42:18 44:1

**double (1)**
19:16

**dragging (1)**
10:18

**draws (1)**
45:3

**due (4)**
16:5 20:2 25:12
28:15

**during (2)**
5:22 16:10

## E

**earn (3)**
6:14 7:11 37:12

**earned (6)**
7:4,13 8:1,2 9:5,7

**easy (1)**
37:3

**effect (1)**
39:18

**effective (10)**
11:25 12:7 30:8,19
41:16 42:20 43:19,19,
21 44:13

**effectuated (1)**
13:4

**effectuates (1)**
13:19

**efforts (1)**
11:10

**EFH (1)**
43:8

**either (3)**
25:8 39:5 41:14

**electronic (1)**
3:12

**elements (1)**
27:16

**eligible (4)**
35:22,25 36:2,8

**else (5)**
9:18 11:20 22:8
45:20 47:17

**Email (2)**
3:11 4:24

**employee (5)**
6:21 7:2 10:4,20
15:24

**employees (7)**
6:13,13,14 10:24
11:1 16:1 37:19

**employees' (1)**
10:13

**employment (1)**
7:14

**end (7)**

15:10 27:21 28:7
34:7 35:6 38:1,3

**ended (1)**
30:1

**enough (3)**
25:5 42:21 45:10

**enter (2)**
12:11 42:19

**entered (3)**
30:11,12,21

**entitled (1)**
37:6

**escrow (3)**
10:5 45:3,4

**escrows (1)**
46:25

**ESQ (3)**
3:1,3,7

**established (2)**
35:15 36:15

**estate (17)**
10:18 12:22 20:20
24:15 25:2,2,9 30:10,
17 31:2 32:14,20
34:10,17 37:7,23 42:3

**et (1)**
41:24

**even (15)**
14:7,9 16:18 17:12
18:16 19:10 20:20
21:2,22 25:17 28:16
29:19 33:7 40:3 41:23

**event (3)**
39:1 43:23 46:1

**Every (2)**
10:5,25

**everyone (3)**
12:13 15:8 42:6

**everything (2)**
33:5 42:18

**evidence (5)**
8:18 21:20 22:4
36:9,13

**evidentiary (4)**
27:22 33:13 35:11
36:9

**exact (1)**
6:12

**exactly (1)**
32:22

**examine (1)**
6:6

**example (1)**
17:14

**exceed (1)**
20:22

**excellence (2)**
10:2,7

**excellent (3)**
9:24 11:7 44:19

**exception (1)**
27:14

**exceptions (3)**
26:25 27:20 35:15

**excluding (1)**
20:21

**exist (3)**
40:12 41:1,7

**expense (3)**
10:19 37:6,17

**expenses (10)**
17:2 19:18,20
22:23 24:14 31:12
32:14 34:9 37:14,16

**expired (1)**
12:9

**expiring (1)**
18:23

**extension (1)**
44:8

**extensive (1)**
20:7

**extent (8)**
12:5 21:15 22:3
41:14 44:8 45:6 46:9,
19

**extra (1)**
11:12

**extremely (3)**
33:7 37:10 38:11

**eyes (1)**
16:22

---

**F**

---

**fact (7)**
17:8 21:21 28:2,3
29:17 33:10 47:11

**factor (1)**
10:6

**facts (2)**
9:11 10:15

**factual (2)**
27:17 28:17

**fair (2)**
22:16 45:10

**fairly (1)**
10:17

**faith (1)**
27:14

**familiar (1)**
29:9

**Fargo (1)**
42:3

**fear (1)**
32:17

**feature (1)**
11:6

**fee (2)**
32:15 46:9

**fees (20)**
17:18 18:7 19:18,
19 20:21 22:18,22
23:4 24:4,5,6,12,13,
18 31:16,19 37:14
46:12,16 47:8

**few (3)**
3:21 20:4 33:19

**fides (1)**
20:11

**fighting (1)**
15:11

**figuring (1)**
38:13

**file (7)**
12:12 17:16,19
18:7,11 22:1 29:16

**filed (10)**
4:17 20:4,5 26:17
29:17 30:6,16,18
44:18 46:8

**files (1)**
17:20

**filing (3)**
16:6 39:9 43:20

**final (2)**
12:8 31:24

**finally (3)**
4:13 33:18 35:6

**financial (1)**
37:11

**find (2)**
29:25 35:12

**finds (1)**
37:13

**fine (6)**
5:3 42:12 43:2,5
45:11,13

**Finger (1)**
3:19

---

**finished (1)**
13:15

**fired (1)**
7:23

**firm (3)**
4:6 17:20 19:16

**first (6)**
3:25 4:2 19:4 27:8
32:10 47:8

**fits (1)**
27:19

**fix (1)**
37:25

**following (1)**
5:21

**force (2)**
17:25 18:1

**forced (1)**
34:16

**form (2)**
14:4 43:17

**former (1)**
6:8

**forward (7)**
27:4 29:21,22 30:3
31:10 40:21 46:4

**fought (2)**
10:3,5

**found (2)**
6:10 36:1

**four (2)**
7:25 13:7

**Frank (1)**
32:8

**frankly (1)**
20:1

**free (3)**
17:3 18:1,2

**frees (1)**
11:2

**Friday (2)**
30:16,24

**Fried (1)**
32:8

**front (1)**
44:15

**frustration (1)**
13:17

**full (1)**
5:14

**fully (2)**
23:8,12

**fundamental (1)**
15:14

**funding (7)**
16:23 19:14,15,18
20:16 24:11 47:10

**funds (3)**
10:12 25:7 41:24

**Further (2)**
18:18 33:16

**future (1)**
31:1

**G**

**game (1)**
39:3

**Gary (1)**
32:7

**gave (1)**
13:12

**gets (1)**
18:22

**getting (4)**
19:1,4 34:18 39:10

**give (5)**
41:20 42:21 44:11
46:14 47:12

**given (3)**

18:18 20:19 39:21

**glad (1)**
6:6

**goes (4)**
38:15,16 42:3 47:7

**go-forward (1)**
19:19

**going (30)**
4:2 8:16 16:17 18:6,
10,15 19:22 27:2
32:20 33:1,15,23,23
34:2,23,24 35:10
36:12 39:16 40:9
41:12,25 43:4,24,25
44:5 46:4,10,13,14

**gold-plated (1)**
41:2

**gone (2)**
20:18 30:3

**Good (11)**
3:16,17 4:9 22:14
29:2,4,14 32:4,6
44:14,21

**goods (1)**
37:20

**gotten (1)**
30:2

**granted (2)**
19:7 46:3

**gratitude (2)**
11:12,14

**GREGORIO (1)**
3:3

**Grey (1)**
4:21

**Gross (22)**
4:6,9,10 5:6 6:4,5,
23 7:5,8,12,16,20,22
8:1,14 9:2,8,14,17
11:21 14:18,22

**guesses (1)**
30:1

**H**

**half (1)**
24:12

**handbook (1)**
7:2

**handed (1)**
14:25

**handle (1)**
43:6

**handling (1)**
4:7

**happen (5)**
14:10 16:20 28:9
39:1 41:12

**happened (1)**
4:24

**happenstance (1)**
28:3

**happy (1)**
26:7

**hard (6)**
10:3,3 15:11 23:3
37:9 42:12

**Health (1)**
41:4

**heap (1)**
38:3

**hear (2)**
28:24 46:22

**heard (3)**
9:19 44:22 47:13

**hearing (9)**
11:23 16:16 19:4
27:4,22 28:4 33:13
35:12 47:21

**Hello (2)**

43:15,16

**Here's (1)**

35:10

**herself (1)**

18:5

**hibernation (1)**

25:10

**highly (1)**

37:10

**hills (1)**

34:3

**hold (2)**

28:9 41:9

**holding (1)**

13:2

**hole (4)**

20:23,24 30:3 33:2

**honestly (1)**

21:19

**Honor (61)**

3:18,22 4:5,10 9:9,

21 10:7 11:22 12:3,24

13:1,18 14:4,11 15:4,

12,15,24 16:13,16,18

17:7,22 19:3,7,25

20:2,15,25 21:2,12,20,

24 22:4,7,15,25 23:7,

22 25:24 26:1,12,16,

23 27:8,25 28:23 29:3,

15 32:5,10,15 33:9,14

35:8 43:18 45:18 46:1,

3,19 47:14

**Honor's (2)**

19:22,24

**hope (3)**

26:1 32:23 34:15

**hoped (2)**

19:19,25

**Hopefully (3)**

12:19 33:4 38:10

**hourly (1)**

6:14

**hours (1)**

30:16

**However (2)**

24:17 38:19

**huge (1)**

19:24

**hunky-dory (1)**

33:6

**hydrogen (1)**

24:21

**I**

**idea (2)**

19:21 31:4

**ie (1)**

8:22

**ignore (1)**

17:3

**imagine (1)**

15:11

**important (1)**

13:1

**importantly (1)**

19:15

**impossible (1)**

21:8

**Inaudible (1)**

15:1

**inclined (1)**

28:16

**include (2)**

40:1 45:5

**including (6)**

15:9,21 20:8 37:8,

17 45:8

**indefinitely (2)**

16:25 17:23

**indenture (1)**

42:4

**independent (1)**

38:5

**inequity (1)**

27:14

**insisted (1)**

24:17

**insolvency (3)**

24:20,23 36:17

**insolvent (9)**

16:14 18:15,16

21:2,11 31:2 32:20

34:17 36:25

**instance (1)**

47:9

**instances (1)**

28:10

**insurance (1)**

17:16

**intend (1)**

46:9

**intent (1)**

42:16

**interest (2)**

10:4 27:15

**interim (1)**

47:1

**intermediate (1)**

38:24

**introduce (1)**

29:8

**irresponsible (1)**

37:1

**IRS (1)**

18:9

**issue (7)**

27:17 35:24 36:16

39:17 40:19 42:1

44:12

**issued (1)**

20:12

**issues (2)**

25:18 39:19

**item (1)**

44:10

**items (2)**

3:21 45:22

**itself (1)**

45:24

**J**

**JACK (2)**

3:7 4:14

**Jackie (1)**

29:11

**JACOBSON (1)**

3:6

**January (7)**

6:15,16 7:9,11,24

8:3,3

**Jevic (2)**

25:15 33:17

**jobs (1)**

15:20

**Joe (2)**

4:6,10

**Judge (11)**

23:12 33:4,8,19

36:23 39:1,15 40:20

41:1,3,3

**jurisdiction (5)**

39:21,24,25 40:6

41:2

**justice (1)**

39:13

**K**

**Kaplan (6)**
32:3,4,7,7 38:22
44:7

**keep (4)**
33:22 34:4,5,12

**keeping (1)**
31:4

**kept (1)**
34:1

**key (2)**
35:24 36:16

**kind (5)**
14:13 44:2,7,9 45:2

**Kinel (21)**
17:25 20:19 22:13,
14,25 23:7,10,14,17,
20,22 24:6,10,16 26:5,
12,16,21 29:1 34:23
36:18

**Kinel's (1)**
38:16

**knowing (1)**
18:15

**knows (1)**
43:8

## L

**lack (1)**
16:23

**LaForge (1)**
33:25

**language (1)**
45:5

**languish (1)**
41:19

**languished (1)**
23:25

**largely (2)**
20:2 22:2

**last (8)**
13:9 21:25 25:4
28:4 30:6 32:11 42:10
46:8

**late (3)**
21:25 28:5 46:8

**later (4)**
11:2 17:5 27:3 47:2

**law (2)**
27:1 41:13

**lawyers (5)**
23:2,6 37:4,7,11

**Layton (1)**
3:19

**learned (1)**
25:3

**least (3)**
15:7 25:9 47:3

**leave (2)**
5:1 40:8

**left (3)**
20:20 28:13 31:22

**legal (3)**
27:2,13 28:17

**legion (1)**
40:24

**lenders (1)**
16:4

**letting (1)**
29:21

**liabilities (1)**
38:7

**likely (1)**
33:14

**limitations (1)**
18:22

**Linda (1)**
29:3

**list (1)**
21:22

**Literally (1)**
13:18

**litigation (1)**
19:17

**little (1)**
31:14

**lives (1)**
39:8

**LLP (2)**
3:2,6

**long (9)**
22:18 23:25 25:14
34:1 38:20 39:13
41:17,24 43:7

**longer (2)**
16:8 43:4

**long-time (1)**
36:22

**look (7)**
18:13 19:9 21:3,4
25:22 38:6,6

**looked (1)**
40:14

**lose (1)**
12:21

**lost (4)**
6:19 11:5 34:13,14

**lot (3)**
16:8 32:21 36:5

**loud (2)**
44:22 46:22

**lower (2)**
23:2 37:5

## M

**made (3)**
10:25 47:1,1

**mail (1)**
5:1

**maintain (1)**
25:9

**maintained (1)**
15:20

**make (12)**
12:13 13:2,3 27:5
28:20 34:19 37:12
38:9 42:5 43:2 45:3
46:18

**makes (2)**
22:22 36:5

**making (2)**
13:9 38:12

**manage (1)**
39:25

**mandates (1)**
25:12

**manner (1)**
37:1

**many (5)**
25:14,15 33:17
34:8,8

**mark (1)**
10:2

**marked (1)**
10:1

**Marrama (3)**
27:2 35:16,24

**materially (1)**
10:15

**matter (6)**
4:7 9:19 21:23
26:11 28:3,18

**may (15)**
5:20 9:1 14:22
16:13 19:3 21:24
26:12,16 32:10 37:25
38:1,2 44:1,17 45:17

**maybe (5)**
31:16 33:16,19,21

42:23

**mean (1)**
39:7

**means (2)**
13:9 17:24

**meant (1)**
39:14

**measure (2)**
11:12 22:3

**meet (1)**
21:16

**met (4)**
21:17,18 27:18,19

**mid (1)**
28:5

**might (8)**
19:11 28:5 38:20,
25 39:18 40:19 41:22,
22

**million (2)**
13:2 24:13

**millions (1)**
34:15

**mind (2)**
40:8,23

**minimis (1)**
17:2

**minimum (2)**
16:15 39:9

**minute (1)**
13:9

**misunderstanding (1)**
31:14

**modifications (1)**
14:14

**moment (2)**
28:21 29:8

**Monday (2)**
30:24 42:21

**money (14)**

13:4 15:25 17:9
25:1,3,5 34:12,20,20,
21 37:12 39:2 42:2
46:23

**monthly (1)**
34:5

**months (16)**
11:16 13:7 16:13
20:5,6 23:9,11,21
25:14,15,18 29:21
34:8 36:15 38:19,19

**more (13)**
11:1 18:16,24
19:15 20:22,24 25:17
30:2 34:21 40:19 41:2
42:22 44:9

**morning (8)**
3:16,17 4:9 22:14
29:2,4 32:4,6

**MORs (2)**
17:16 18:7

**Morton (1)**
3:10

**MOSLE (1)**
3:2

**most (1)**
40:2

**motion (24)**
3:25 4:2,13,15
12:25 13:11 15:7 16:7
20:5,6,14 21:7,22
26:17 29:17,18,20
32:19 40:7 45:23,24
46:2,3,4

**motives (1)**
17:4

**mouth (1)**
18:4

**move (4)**
10:22 22:5 31:10

33:6

**much (4)**
6:13 11:1 25:1 41:2

**must (3)**
17:17,21 21:16

**myself (1)**
40:15

## N

**NANCY (1)**
3:5

**near (1)**
24:22

**nearly (1)**
25:2

**necessarily (2)**
28:1 47:9

**necessary (2)**
25:11,17

**need (17)**
13:2,21,25 17:5
18:6,13 20:11 21:20
22:4 24:3 28:20 30:20
35:14 36:9 42:6 44:8
45:3

**needs (7)**
14:1 17:15 30:10,
18 31:23,24 41:10

**negotiate (1)**
15:23

**NEIL (1)**
3:3

**neutral (5)**
19:23 20:17 29:25
30:2 32:24

**never (5)**
8:9,10 16:17 20:23
25:6

**new (2)**

29:8,9

**news (1)**
44:14

**night (5)**
21:25 30:6,16
42:10 46:8

**nine-month (1)**
39:9

**no-asset (1)**
38:2

**nobody (1)**
30:17

**nonestate (1)**
46:25

**nonoperating (1)**
17:12

**noon (1)**
42:21

**nope (1)**
33:13

**nor (3)**
35:15,21 36:6

**note (2)**
9:22 10:9

**noted (1)**
38:22

**noteholders (2)**
12:5 35:1

**notes (1)**
19:14

**noteworthy (1)**
11:8

**nothing (7)**
20:20 24:7,21
31:22 35:5 36:19 45:7

**notice (3)**
20:8 39:10 43:20

**notion (1)**
21:5

**notwithstanding (1)**

16:21

**nub (1)**

38:15

**number (2)**

25:17 41:7

**numerous (1)**

41:8

## O

**object (3)**

31:2,3 44:7

**objected (1)**

20:7

**objecting (1)**

21:7

**objection (12)**

4:23 5:7,13 8:16

9:13 10:1 21:4,5

29:16 30:4 45:15 47:2

**objections (3)**

4:16,18,20

**obviously (1)**

42:16

**occur (3)**

12:8 28:5 30:14

**o'clock (1)**

43:7

**October (2)**

28:6 43:22

**off (2)**

30:25 31:17

**office (2)**

29:10 31:14

**officer (1)**

5:5

**once (1)**

42:2

**One (16)**

4:20 5:6 9:24,25

11:23 12:6,25 14:19

16:20 19:2 24:9 32:12

33:7 34:10 44:9 45:1

**one-page (1)**

13:18

**only (8)**

8:7 10:15 20:12

25:5,19 34:13,14

45:25

**onto (1)**

13:2

**open (3)**

16:22 28:13 46:19

**operated (1)**

7:3

**operating (1)**

34:5

**operational (1)**

41:13

**operations (1)**

24:2

**opinion (1)**

41:3

**opportunity (2)**

46:15 47:13

**opposed (1)**

47:9

**oral (3)**

23:15,18 33:20

**order (33)**

3:23 4:1 11:16 12:7,

8 13:3 14:4,6,15,17

15:2 30:5,11,12,13,21

31:24,24 38:10,12,17

41:10,11,17 42:20

43:18 45:3,8 46:9,11,

24 47:1,1

**originally (1)**

16:8

**ostensibly (1)**

20:12

**other (19)**

10:20 14:19 15:20

16:20 18:1 24:3 28:25

34:4 37:4,7,16 38:9

40:11 41:8,8,15 44:5

45:1,22

**otherwise (2)**

28:12 38:3

**ours (1)**

17:13

**out (15)**

3:23 6:10 13:4 16:1,

5 17:9 25:2 29:25

34:22 38:13 42:3,13,

14 43:5 44:2

**outstanding (1)**

47:4

**over (7)**

4:5 10:5 11:15

15:12 22:8 31:20

36:15

**overrule (2)**

8:16 9:12

**overwhelmingly (1)**

40:24

**own (1)**

29:18

## P

**pace (1)**

37:22

**paid (14)**

7:3,24 9:4 17:15,17,

21 20:23 22:24 23:5

34:18 37:9 46:24 47:5,

11

**panel (1)**

38:11

**papers (1)**

6:1

**part (4)**

12:25 15:19 19:13

29:23

**participate (1)**

25:8

**particular (1)**

3:24

**parties (10)**

10:3,10,24 11:10

12:10 27:15 28:25

32:8 42:15 44:5

**party (1)**

22:6

**past (1)**

11:15

**pause (1)**

28:22

**pay (7)**

7:19 10:12 15:24

17:18 18:7 21:9 37:24

**paying (2)**

17:24 34:4

**payment (3)**

5:14 24:17 37:6

**pendency (1)**

39:22

**pending (3)**

25:10 45:6,9

**Pennsylvania (1)**

3:10

**Pension (1)**

3:4

**people (4)**

7:19 13:5 18:2 34:4

**Per (1)**

40:14

**perfectly (1)**

25:3

**perhaps (1)**
13:10

**period (2)**
7:4 12:9

**person (3)**
8:2 17:17,19

**Personally (1)**
40:16

**PETER (1)**
3:1

**phone (3)**
4:15 5:8 18:9

**pick (1)**
37:3

**piece (1)**
5:9

**plain (1)**
6:19

**plaintiffs (1)**
10:8

**plan (2)**
12:16 16:17

**pleadings (1)**
32:22

**please (3)**
6:3 14:21 45:19

**pm (1)**
43:22

**podium (2)**
4:5 22:8

**point (3)**
30:21 34:2 38:16

**points (2)**
27:3 32:9

**policy (5)**
6:12 7:19 8:9,11,20

**portion (2)**
4:18,19

**position (4)**
13:10 26:6 44:6

**46:16**

**positive (3)**
19:23 20:18 32:25

**possession (2)**
17:12,13

**possibility (1)**
25:19

**post (1)**
40:13

**postpetition (2)**
37:18,19

**potentially (2)**
19:6 20:18

**Power (2)**
5:10 12:21

**Powers (8)**
5:7,11,12,13 6:6
8:6,7 9:3

**Powers' (1)**
6:9

**practice (1)**
36:22

**prefer (1)**
47:6

**prepare (1)**
22:5

**prepares (2)**
17:17,20

**present (1)**
21:21

**presented (1)**
27:25

**preserve (2)**
28:14 31:10

**pressing (1)**
29:20

**previous (4)**
5:22 7:14,15 8:24

**primary (2)**
21:6 42:1

**probably (1)**
40:19

**problem (2)**
13:23 26:3

**proceed (6)**
4:1 25:24 28:23
35:11 36:25 37:24

**Proceedings (1)**
3:12

**process (7)**
15:19 16:6 25:12
28:15 38:20 39:9 42:7

**produced (2)**
3:13 8:8

**professional (2)**
20:21 46:16

**professionals (8)**
37:4,8,9,11 39:7
46:7,12,24

**Prolstar (1)**
3:1

**propose (2)**
3:22,24

**proposed (2)**
4:12 30:5

**proposition (1)**
40:25

**prosecute (2)**
18:21 25:6

**prosecuting (1)**
24:15

**protect (1)**
31:9

**protective (1)**
22:3

**provided (1)**
6:11

**provides (1)**
5:14

**provision (1)**

**37:19**

**purchase (1)**
10:11

**purchased (1)**
35:1

**purchaser (1)**
10:11

**purpose (1)**
13:13

**purposes (3)**
12:15 24:1 28:12

**pursuant (1)**
14:13

**pursue (4)**
35:2 36:11 38:7,13

**pushed (1)**
30:25

**put (3)**
13:10 18:3 28:9

**putting (1)**
35:6

## Q

**question (5)**
37:21 38:15 39:23,
23 40:11

**questions (2)**
22:9,10

**quick (1)**
44:18

**quit (1)**
8:3

**quits (1)**
6:24

**quote/unquote (2)**
9:7 34:11

## R

**rack (1)**
37:22

**raised (3)**
32:13 39:20 42:16

**raises (1)**
39:17

**RAISNER (5)**
3:7 4:14 9:20,21
11:19

**rather (3)**
11:2 29:21 43:18

**reach (5)**
10:3 11:11,16
43:17 44:1

**reached (1)**
16:3

**read (4)**
5:2 6:1,1 22:1

**ready (1)**
13:8

**real (1)**
34:23

**reality (2)**
37:7 39:12

**really (12)**
22:18 26:8 27:23
31:5,5 34:7 38:15
42:2 45:1 47:6,7,12

**reason (4)**
29:23 34:19 40:18
45:2

**reasonable (4)**
21:1 23:5 37:14
39:23

**reasons (3)**
9:23 16:5 30:9

**recall (2)**
19:3 32:10

**receiving (1)**
25:20

**recess (5)**
13:22 14:1 42:24
43:10,14

**reconvene (2)**
43:8,9

**record (7)**
3:18 21:18 28:20
29:19 31:21 36:10,15

**recorded (1)**
3:12

**recording (1)**
3:13

**recovery (2)**
25:20 34:16

**recurring (1)**
24:3

**redline (1)**
14:25

**refused (2)**
17:9 20:13

**refuted (1)**
8:19

**regard (4)**
11:24 41:16,21
44:12

**regardless (2)**
21:13 35:4

**rein (1)**
30:22

**related (3)**
40:3,4 44:9

**relatively (1)**
43:2

**relevant (1)**
41:14

**relief (1)**
44:2

**reluctant (1)**
19:8

**rely (1)**

15:21

**remain (1)**
36:21

**remaining (1)**
5:7

**remand (2)**
33:11,12

**renders (1)**
26:2

**replacement (1)**
21:8

**reply (2)**
6:2,9

**reporting (1)**
34:6

**reports (1)**
34:5

**represent (1)**
4:23

**representation (1)**
5:4

**request (3)**
45:4,7,9

**requested (1)**
25:5

**require (3)**
17:10,16 32:20

**required (3)**
14:14 35:12 36:10

**requirement (1)**
12:11

**requirements (1)**
12:6

**research (1)**
6:8

**reserve (2)**
10:5 15:23

**resolved (1)**
20:10

**resolving (1)**

19:2

**respects (2)**
15:16,17

**respond (1)**
6:3

**responding (1)**
24:8

**response (1)**
8:6

**result (2)**
20:15 25:25

**resulted (1)**
20:9

**resurrect (2)**
40:6,7

**returns (2)**
17:19 18:12

**reversed (1)**
26:2

**reverses (3)**
26:10 33:9 39:1

**review (1)**
46:15

**Richards (1)**
3:19

**right (21)**
5:10,25 7:7 8:5,15
9:10 13:5 14:1,16,21
21:15 26:24 27:9,12,
20,24 35:13 36:4,11
47:3,19

**rights (1)**
28:15

**Roger (1)**
5:12

**room (1)**
15:9

**RPR (1)**
3:9

**rule (2)**

13:11 35:12

**ruled (2)**

26:22 41:4

**rules (1)**

21:21

**ruling (1)**

33:21

**run (2)**

32:14 34:3

**running (1)**

34:9

## S

**S_arnold@hotmailcom (1)**

3:11

**said (10)**

16:16,18 18:13

19:8,11 20:19 21:24

32:15,23 33:24

**salaried (2)**

6:12,13

**sales (1)**

15:19

**same (4)**

6:14 18:24 41:9

42:16

**sat (2)**

25:14,15

**save (2)**

17:5 27:2

**saved (1)**

15:20

**saw (2)**

14:20 26:19

**saying (2)**

33:18 34:8

**schedule (1)**

23:23

**scheduled (2)**

23:16,19

**second (2)**

23:1 27:11

**secured (2)**

10:10 19:14

**seek (1)**

44:2

**seeking (2)**

25:7 45:25

**seems (1)**

15:13

**segregate (1)**

10:12

**segregation (1)**

10:21

**send (1)**

45:4

**sense (2)**

16:3 36:5

**sensitive (1)**

47:10

**sentence (1)**

45:1

**served (1)**

20:7

**service (1)**

8:24

**services (1)**

37:20

**set (2)**

33:20 35:17

**settlement (25)**

3:25 4:13,19 5:14

9:4,24 10:4,16 11:7,

11 12:7 13:3,14 15:25

16:3,14 19:1 25:16

31:15,17 32:12 33:10

34:11 40:7 41:22

**several (4)**

9:23 11:16 16:12

29:21

**severance (2)**

4:17,21

**SHAPIRO (35)**

3:17,18 4:4 11:22

12:1,2,18,23 13:16,23

14:3,8,11 15:3,6

22:12 24:25 41:17

42:1,23 43:11,13,16

44:14,17,20,22,25

45:12,17,21 46:18,22

47:14,18

**shoestring (1)**

16:11

**short (3)**

38:10,12 43:2

**show (1)**

27:19

**shows (1)**

21:18

**sign (2)**

14:6 46:14

**signed (2)**

12:4 15:2

**signed-up (3)**

19:10,10,12

**Simple (1)**

25:12

**single (1)**

10:1

**sit (5)**

17:23 18:14,21

25:16 42:17

**sitting (1)**

23:8

**situation (1)**

6:20

**skin (1)**

39:2

**slight (1)**

11:23

**slightly (1)**

3:23

**solvent (1)**

36:21

**somebody (1)**

22:19

**somehow (3)**

22:22 23:5 37:4

**someone (3)**

29:9 39:2,4

**something (6)**

14:10 15:12,13

42:12,13,14

**sometime (1)**

28:5

**somewhat (1)**

19:8

**soon (3)**

12:18 16:20 33:5

**sooner (1)**

11:2

**sorry (3)**

23:17 44:24 47:16

**sort (2)**

31:4 38:3

**sought (1)**

10:12

**sound (1)**

3:13

**source (1)**

47:9

**speak (5)**

5:8 15:8 28:21 42:9,

24

**speaking (2)**

11:22 18:5

**special (1)**

4:10

**species (1)**

37:5

**specific (2)**

13:13 24:1

**Specifically (1)**

21:4

**specified (1)**

41:21

**specifies (1)**

36:19

**specify (1)**

41:18

**speed (1)**

10:16

**spend (1)**

34:20

**spending (1)**

34:12

**spent (1)**

19:16

**spoke (1)**

44:4

**stakeholders (1)**

10:25

**stand (1)**

11:13

**standard (3)**

27:13,18,19

**standing (3)**

25:23 35:2 40:21

**standstill (1)**

11:15

**starting (1)**

27:1

**state (11)**

18:15 19:22,23

20:17,18 21:13 25:9

29:24 30:1 32:24,24

**stated (1)**

45:24

**statement (1)**

5:14

**stating (1)**

41:5

**status (1)**

16:22

**statute (1)**

18:22

**stay (1)**

16:25

**Steel (1)**

3:3

**step (1)**

33:7

**steps (2)**

30:10,20

**still (2)**

19:11 40:21

**stopping (1)**

35:7

**stroke (1)**

10:14

**stuck (1)**

33:25

**subject (2)**

22:5 47:2

**submit (2)**

27:13 46:9

**subsequent (1)**

14:10

**successful (3)**

15:16,18,22

**sued (1)**

34:25

**sufficient (2)**

20:1 24:10

**suggestion (1)**

46:19

**supplement (1)**

46:8

**support (1)**

40:24

**supports (1)**

4:15

**supposed (1)**

23:3

**Supreme (2)**

27:1 36:1

**sure (8)**

12:14 13:3,3,23

42:5,13 43:11 46:21

**SUSAN (1)**

3:9

**system (1)**

39:14

**T**

**table (1)**

16:18

**talented (1)**

37:10

**tangentially (2)**

40:2,4

**target (1)**

35:3

**tax (2)**

17:19 18:11

**telephone (1)**

43:3

**tens (3)**

34:14,14,14

**term (1)**

7:14

**termination (1)**

8:25

**terms (2)**

12:2 14:12

**testimony (1)**

8:19

**their (11)**

6:14 12:6 17:4 21:4,

5 23:4 28:21 29:18

34:4,6,11

**themselves (1)**

46:10

**There (36)**

4:18 7:5 8:10,21

9:23 14:24 21:16,17

23:1 26:25 27:6,8,10,

11,13,23 28:10,14

30:9,9,14,19,22 31:5,

9 34:22 35:15,21 36:6,

7 37:25 38:8 41:8

45:6,21,22

**therefore (1)**

10:21

**they (32)**

5:16 6:15,16,17,18,

19 7:1,3 8:3,3 17:3,10

20:6,7 21:6,9 24:10

25:8 28:25 33:24 34:3,

4 35:1,2,2 36:24 37:9,

12,20,21 42:6 46:9

**thin (1)**

16:11

**thing (5)**

7:6 8:7 12:25 24:9

31:6

**things (5)**

9:23 30:14 39:15

41:20 43:20

**think (39)**

4:14 9:10 15:8,9,10,

15 18:1,5,10 19:7

21:12,20 22:16 24:24

26:25 27:6,15 28:22

30:6,7,11,18,20,22,23

31:13,21 35:16 36:9,

10,13,23 37:1 39:22

40:3,17 41:10,25

43:25

**thinks (3)**
17:10,25 22:4

**Third (6)**
26:10,18 27:17
33:15 39:6,11

**though (3)**
14:7,9 33:3

**thought (1)**
31:15

**three (5)**
7:24 8:1,2,4 27:6

**throughout (1)**
5:19

**tight (1)**
30:22

**till (1)**
13:21

**tired (1)**
15:10

**today (15)**
3:19 13:21 15:24
17:8 27:7,22 28:2,9
29:10,25 30:8,23,24
41:22 42:20

**today's (1)**
3:21

**told (1)**
17:1

**tomorrow (4)**
12:19 13:21 30:24
41:23

**took (3)**
16:7 25:4 33:17

**top (1)**
21:12

**totally (1)**
33:8

**tough (1)**
15:17

**Transcribed (2)**
3:9 5:1

**transcript (1)**
3:13

**transcriptionist (1)**
3:14

**transfer (1)**
41:24

**transferred (1)**
42:2

**Trevor (1)**
3:7

**trial (1)**
29:10

**true (1)**
6:10

**truly (1)**
10:21

**Trust (1)**
3:4

**Trustee (11)**
24:4 29:6,16 31:7,
19 32:23 38:6 42:4
46:15,17 47:12

**Trustees (2)**
30:15 38:11

**Trustee's (1)**
31:13

**try (1)**
43:24

**turn (2)**
4:5 22:8

**turning (1)**
15:6

**turns (1)**
34:22

**two (5)**
4:16,20 23:13,14
45:22

**U**

**ultimate (1)**
25:25

**ultimately (1)**
16:7

**unable (2)**
43:23 44:1

**unanimous (1)**
9:25

**under (12)**
7:1 9:4,11 12:2
14:12 23:5 31:17
35:19,23,25 36:2
37:14

**underlying (1)**
11:6

**understand (9)**
5:8 13:17,17 25:22
26:4 44:4,6 46:7 47:15

**understanding (1)**
43:23

**Understood (1)**
14:3

**undisputed (2)**
21:18 32:19

**unfortunate (1)**
26:6

**unfortunately (1)**
32:17

**unless (2)**
19:9 22:8

**unlike (1)**
24:25

**unlikely (1)**
33:7

**unnecessary (1)**
9:16

**unsecured (1)**

25:20

**unsuccessful (1)**
16:2

**until (7)**
5:21 6:15,21 8:22
16:25 25:18 28:5

**untold (1)**
11:3

**unused (1)**
7:19

**unusually (1)**
11:7

**up (12)**
5:22 11:2 30:1
32:14 33:15 34:5,9,23
37:22 38:1,3 39:5

**upon (5)**
21:6 26:22 40:25
41:5 43:19

**use (6)**
6:17,19 7:15 8:22
19:21,23

**using (1)**
5:16

**UST (3)**
17:18 18:7 44:5

**uttered (1)**
24:20

**V**

**vacation (18)**
4:17,21 5:15,18,23,
24 6:12,14,16,18 7:4,
6,11,19,25 8:4,22 9:5

**valid (2)**
37:16,20

**value-added (2)**
10:22 11:6

**vendors (2)**

15:21 37:20

**view (4)**

9:24 10:15,21 33:3

**voice (1)**

5:1

## W

**wages (2)**

37:18,18

**wait (4)**

18:17,21 33:19

42:17

**waiting (2)**

25:14,15

**waive (2)**

12:3,11

**Walsh (3)**

41:1,3,4

**wanted (1)**

12:13

**wants (4)**

28:23 39:3,4 46:17

**WARN (13)**

3:24 4:10,18 10:19

11:4 13:14 18:25

19:17 25:6,16 29:22

32:12 41:21

**way (5)**

7:2 16:20 38:21

39:5,13

**ways (1)**

28:14

**week (2)**

23:13 25:4

**weeks (10)**

7:24 8:2,2,4 20:4

23:13,14 30:25 33:19

38:19

**weight (1)**

10:19

**Weissgerber (1)**

29:11

**welcome (2)**

15:5 29:13

**well-founded (1)**

32:18

**Wells (3)**

42:3,5,9

**Wells' (1)**

42:25

**whatever (2)**

34:18 46:16

**what's (1)**

40:9

**wherewithal (1)**

18:20

**whole (1)**

39:8

**who's (3)**

4:6,14 34:18

**wide (1)**

16:22

**willing (2)**

22:19 38:18

**wind-down (1)**

16:11

**wires (1)**

43:24

**wish (1)**

9:18

**withdraw (4)**

20:13 21:6 45:23

46:4

**withdrew (1)**

4:22

**within (1)**

27:19

**without (4)**

17:11 21:1 40:8,17

**wondering (1)**

13:7

**word (1)**

24:19

**words (3)**

18:4 19:22,24

**work (13)**

5:18 6:15 17:3,11,

25 18:2 23:2 37:9

38:21 39:13 42:13,14

43:4

**worked (2)**

8:10 10:3

**working (1)**

5:18

**works (1)**

6:21

**World (1)**

41:4

**worth (2)**

11:1 24:13

**write (1)**

22:19

**writing (2)**

4:25 12:4

**wrong (4)**

26:8,8 33:10,14

## Y

**year (15)**

5:17,19,21,22 6:17,

18 7:14,15,15,16,20,

21 8:23,24 33:21

**years (3)**

8:10 33:17 38:19

**yesterday (1)**

4:22

**YODER (1)**

3:9

## Z

**Zach (1)**

3:18

## 1

**1 (2)**

7:11 8:3

**11 (10)**

16:25 17:23 23:25

31:6,11,19,23 35:19

36:22,24

**11:00 (2)**

43:3,7

**11:48 (1)**

47:21

**13 (3)**

36:1,2,4

**17 (1)**

8:10

**19070 (1)**

3:10

**1st (3)**

6:15,16 7:9

## 2

**2 (3)**

6:25 8:3 43:22

**2015 (1)**

9:5

**2016 (4)**

9:1,2,3,7

**2017 (1)**

43:22

**2nd (1)**

7:24

**3**

**30th (1)**
6:22
**330 (2)**
23:5 37:14
**331 (1)**
37:15

**4**

**40 (2)**
8:9,11

**5**

**5 (1)**
38:8
**5:00 (1)**
43:22

**7**

**7 (14)**
24:24 31:6,19
35:20,23 36:8 38:1,4,
5 40:2 41:6 46:14,17
47:12